UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARIAN ALEXANDER BROOKS,<br><br>Plaintiff,<br><br>vs.<br><br>ZACHARY RUNGE, Correctional officer at Jamison Annex Prison, individual capacity,<br><br>Defendant. | 4:25-CV-04002-ECS<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

Plaintiff Marian Alexander Brooks brought numerous constitutional claims related to his incarceration in two now-consolidated cases dated January 3, 2025 and February 28, 2025. Doc. 1; Complaint, Brooks v. U.S. Dep't of Corr., No. 4:25-CV-04029-ECS (D.S.D. Feb. 28, 2025). After § 1915 screening, only an Eighth Amendment excessive force claim against Correctional Officer Zachary Runge, in Runge's individual capacity for money damages, survived. Brooks v. S.D. Cts., No. 4:25-CV-04002-ECS, 4:25-CV-04029-ECS, 2025 WL 2142312, at *6 (D.S.D. July 29, 2025). Now pending before the Court is Runge's motion for summary judgment. Doc. 21.

## I.    Factual Background[1]

On May 22, 2024, Marian Alexander Brooks was an inmate in the South Dakota State Penitentiary (SDSP). Doc. 23 ¶ 1. While Brooks was an inmate at the SDSP on May 22, 2024, Zachary Runge was employed and working as a correctional officer in the SDSP. Id. ¶ 2. While working that day, part of Runge's work duties was to transport Brooks from the shower back to his cell. Id. ¶ 3. Brooks, after showering and before being transported back to his cell, ran away from Runge and attempted to run out of the prison. Id. ¶ 4. Brooks' escape attempt ended when a number of SDSP officers took him to the ground and then put him in handcuffs and a tether; Runge was not one of the officers making the tackle. Id. ¶ 5.

Runge then walked Brooks back to his cell with handcuffs and the tether. Id. ¶ 6. Upon getting to his cell, Brooks and Runge exchanged some words and began to engage in a tug-of-war on the handcuffs and tether with Runge. Id. ¶ 7 (internal quotation marks omitted). During the tug-of-war struggle, the cell door began to close, and Brooks' arms were caught by the door, stopping the door from closing entirely. Id. ¶ 8. Brooks was then placed into his cell and left alone, during which time he paced, read, and slept. Id. ¶ 9.

Brooks was awakened in his cell and ordered to "cuff up" by Lieutenant Deppe, and Brooks yelled at Deppe regarding this order. Id. ¶ 10. Lieutenant Deppe, not Runge, eventually deployed chemical spray on Brooks in his cell. Id. ¶ 11. Brooks was then taken by Runge and Deppe to rinse off the spray and to a "suicide cell." Id. ¶ 12.

---

[1] Brooks did not respond to Defendant Zachary Runge's Statement of Undisputed Material Facts. Those facts are deemed admitted. D.S.D. Civ. LR 56.1(D). The Court will also consider facts alleged in Brooks' verified complaint to determine whether a genuine issue of material fact exists. Weigel v. City of Flandreau, No. 4:23-CV-04184-ECS, 2026 WL 810819, at *2 (D.S.D. Mar. 24, 2026) (citing, inter alia, Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001)). Most quotation marks and internal citations are omitted when quoting from Runge's Statement of Undisputed Material Facts.

## II.    Summary Judgment Standard

"Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Allan v. Minn. Dep't of Hum. Servs., 127 F.4th 717, 720 (8th Cir. 2025) (quoting Avenoso v. Reliance Standard Life Ins. Co., 19 F.4th 1020, 1024 (8th Cir. 2021)). "A party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation modified). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp., 477 U.S. at 324). At the summary judgment stage, the Court must view evidence "in the light most favorable" to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

## III.    Discussion

For Brooks' excessive force claim against Runge, Runge isolates three acts from the verified complaint that implicate Runge: (1) when correctional officers "slammed [Brooks] to the

3

ground" as Brooks tried to escape; (2) when Brooks' arm was caught in a closing door during a "tug-of-war" with Runge; and (3) when a correctional officer deployed a chemical spray on Brooks. Doc. 22 at 1–4; see Doc. 1 at 9; see also Brooks, 2025 WL 2142312, at *5 (recognizing Runge's implication as to the tug-of-war and chemical spray).

Runge argues that he cannot be held liable for Brooks being taken to the ground or the chemical spray because, at deposition, Brooks admitted Runge was not involved in those acts. Doc. 22 at 4. The Court agrees. As to the tackling, Brooks explicitly testified that Runge "didn't tackle me." Doc. 23-1 at 43:15—44:4. As to the chemical spray, Brooks testified that he "believe[d] it was Dep[pe]," or "I don't know who sprayed me." Id. at 62:12–21. Runge can only be held liable for his own actions. Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)). So, as to these claims, summary judgment is appropriate and granted.[2]

The Court turns its attention to the sole remaining claim: that Runge used excessive force when he engaged in a tug-of-war with Brooks by way of a tether connected to Brooks' handcuffs, resulting in Brooks' arm getting trapped by a closing cell door.

---

[2] To the extent Brooks, in his verified complaint, alleges Runge as one of five officers who dispensed the chemical spray, see Doc. 1 at 9, the result does not change. In Meriwether v. Caraustar Packaging Co., the Eighth Circuit affirmed a district court's award of attorney's fees where the plaintiff's deposition testimony "contradicted eight of the twenty-one paragraphs of her verified complaint." 326 F.3d 990, 994 (8th Cir. 2003). Those fees were only available under Title VII "if the plaintiff's claim was 'frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly become so.'" Id. (ellipsis in original) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)). Considering the plaintiff's inconsistency, the Eighth Circuit found no abuse in discretion in determining such conditions existed. Id. By analogy, the Court can conclude here that Brooks' initial claim that Runge along with five other officers dispensed the chemical spray has been rendered frivolous, unreasonable, or groundless by Brooks' ever-changing position on who dispensed the spray. See Doc. 1 at 9 (group pleading Deppe, Runge, Spangeberg, Reed, and Downs as collectively dispensing the chemical spray); Doc. 23-1 at 62:12–21 (sworn deposition testimony that Deppe or "I don't know who" dispensed the spray); Doc. 25 at 1 (Runge); Doc. 27 at 1 (Deppe). The Court may dismiss frivolous or groundless claims "at any time." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); see also Bell v. Ross, No. 2:23-cv-02116-TLB-MEF, 2024 WL 4901918, at *3 (W.D. Ark. Nov. 7, 2024), adopted, 2024 WL 4898076 (W.D. Ark. Nov. 26, 2024) (court granting summary judgment where allegations in verified complaint were "contradicted by the summary judgment record – including [Plaintiff's] own deposition testimony – such that no jury could believe them.").

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" Stork v. S.D. State Prison, No. 4:23-CV-04128-RAL, 2024 WL 2356759, at *7 (D.S.D. May 23, 2024) (quoting Hudson v. McMillian, 503 U.S. 1, 5, (1992)). "In determining whether excessive force was used, the 'core judicial inquiry . . . [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (alterations in original) (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)).

> The distinction provided by the inclusion of the term "sadistically" is one of significance, for "maliciously" and "sadistically" have different meanings, and the two together establish a higher level of intent than would either alone. One acts "maliciously" by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts "sadistically" by engaging in extreme or excessive cruelty or by delighting in cruelty.

Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994) (citations omitted). "To determine if force was reasonable and in good faith, courts may consider the need for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted." Stork, 2024 WL 2356759, at *7 (citing Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam)).

Immediately after Brooks attempted to escape prison, Runge transported Brooks back to his cell using handcuffs tied to a tether. Doc. 23 ¶¶ 3–6; Doc. 1 at 9. While Brooks was in his cell and Runge outside of it, a "tug-of-war" initiated between the two. Doc. 23 ¶ 7; Doc. 23-1 at 50:1–14. Brooks explains:

> Runge pulled the rope, so I pulled it back a little bit, like, trying to - - like - - it was one of them things, like, he pulled the rope so I pulled it back, you know what I'm saying. Like - - and then he yanked it harder. So then I yanked it harder. And then he yanked me all the way out - - he yanked me all the way out, but he didn't yank me hard enough out. And I got caught in between the door.

Doc. 23-1 at 50:4–11. Brooks states he "was hurt it felt like [his] arm had been [extended] but [he] was going to deal with the pain." Doc. 1 at 9.

Runge argues that Brooks began the tug-of-war, thus inviting reciprocating force, or in the alternative, the tug-of-war began because Brooks resisted Runge's direction by pulling back when Runge pulled on the tether. Doc. 22 at 5–6; see also Doc. 1 at 9 (Brooks alleging Brooks pulled the tether first); Doc. 23-1 at 50:3–5 (Brooks testifying Runge pulled the tether first). Either way, it was not Runge's first tug that led to Brooks getting caught in the door. Doc. 23-1 at 50:4–11. Brooks' alleged arm injury was the consequence of his initiating a contest of will or strength against an officer. Where Brooks repeatedly "yanked [the tether] harder," he invited Runge's equal and opposite reaction. Id. at 50:8; Doc. 22 at 6. This act of insubordination arrived on the heels of Brooks' escape attempt, while his cell door was still open. See Doc. 22 at 6. It was reasonable in that moment for Runge to perceive a new and immediate threat to his safety and prison security. It was therefore rational for Runge to resist the pull of Brooks' tether that could expose him or the prison to further risk. See id. ("Runge was tasked with taking a prisoner who had tried to escape prison back to his cell. At his cell, the prisoner pulled his handcuffs and the tether, perhaps to bring Runge into the prisoner's cell (which was closing), or to break free to attempt escaping the prison again."); Treats v. Morgan, 308 F.3d 868, 875 (8th Cir. 2002) ("force may be justified . . . if the inmate's noncompliance also poses a threat to other persons or to prison security").

Summary judgment is appropriate where no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For Brooks' claim to survive the instant motion, he must demonstrate a genuine issue of material fact exists as to whether Runge acted "maliciously and sadistically." Runge argues the facts "show a good-

6

faith and reasonable response by Runge." Doc. 22 at 5. No reasonable jury could disagree. It is therefore

ORDERED that the Motion for Summary Judgment by Defendant Zachary Runge, Doc. 21, is granted. Brooks' claims against Runge in his individual capacity are dismissed with prejudice.

DATED this 30th day of June, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

7